# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| BEST MEDICAL INTERNATIONAL, INC., | Civil Action No. 1:19-cv-03409-MLB |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. |  |
| ELEKTA, INC. and ELEKTA LIMITED, |  |
| Defendants. |  |

## ELEKTA'S MEMORANDUM IN SUPPORT OF MOTION

## TO STAY CASE PENDING *INTER PARTES* REVIEW

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................1

II.    HISTORY AND STATUS OF THIS LITIGATION ......................................2

III.   PATENT OFFICE REVIEW OF THE ASSERTED PATENTS..................6

IV.   LEGAL STANDARD ...............................................10

V.    ARGUMENT.........................................................12

     A.    The status of the instant action weighs in favor of a stay .................12

     B.    A stay will simplify the issues before this Court .............................15

          1.    The Patent Office will decide the validity of most of the asserted claims in two of the asserted patents..........................16

          2.    The Patent Office's determinations on the '096 Patent claims should apply to similar '283 Patent claims .................17

          3.    The Patent Office's analysis will simplify assessments of all Asserted Patents and all Asserted Claims..........................18

          4.    Elekta's validity defenses in the litigation will be limited by IPR estoppel .......................................................20

     C.    A stay will reduce the resource burden on this Court and the parties ...............................................................21

     D.    The impact of COVID-19 on this Court and civil cases in general further supports granting a stay at this time .........................22

     E.    A stay would not cause BMI to suffer undue prejudice or give Elekta an unfair tactical advantage....................................24

VI.   CONCLUSION................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS, LLC v. EMC Corp.*,
109 F. Supp. 3d 352 (D. Mass. 2015)...................................................17

*Clinton v. Jones*,
520 U.S. 681 (1997)............................................................................10

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
2012 U.S. Dist. LEXIS 51794, No. 5:10-cv-02051-EJD (N.D. Cal.
April 12, 2012)..................................................................................14

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988) ...........................................................10

*Ethicon LLC v. Intuitive Surgical, Inc.,* 2019 US Dist LEXIS 45452,
Case No. 17-871-LPS (D. Del. March 20, 2019) .................................12

*Graywire, LLC v. Ciena Corp.*
2009 U.S. Dist. LEXIS 131906, Case No. 1:08-cv-2993-BBM
(N.D. Georgia July 17, 2009) ............................................ 13, 16, 19, 20, 21, 22

*In re Etter*,
756 F.2d 852 (Fed. Cir. 1985) .............................................................19

*Intellectual Ventures II LLC v. SunTrust Banks, Inc.*,
2014 U.S. Dist. LEXIS 142295, Case No. 1:13-cv-02454-WSD
(N.D. Ga., Oct. 7,  2014)......................................................11, 16, 17

*Interface, Inc. v. Tandus Flooring US, LLC*,
2013 U.S. Dist. LEXIS 158608, Case No. 4:13-cv-46-WSD (N.D.
Ga. Nov. 5, 2013)..........................................................13, 21, 24, 25

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
2019 U.S. Dist. LEXIS 141545, Case Nos. 18-452-WCB (D. Del.
Aug. 21, 2019) ..................................................................11, 17

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)...................................................................................10

*Murata Mach. USA v. Daifuku Co.*,
   830 F.3d 1357 (Fed. Cir. 2016) ................................................10, 11

*Tomco2 Equip. Co. v. Se. Agri-Sys., Inc.*,
   542 F. Supp. 2d 1303 (N.D. Ga. 2008).......................................*passim*

**Statutes**

35 U.S.C. § 315(e)(2)..................................................................................20

**Other Authorities**

37 C.F.R. § 42.100(c)..................................................................................24

Local Patent Rule 4.2 .................................................................................4

# I.      INTRODUCTION

In light of the United States Patent Office's recent decision to institute *inter partes* review to determine the patentability of two of the four patents asserted in this case, and the calendar congestion and scheduling issues created by Plaintiff Best Medical International's ("BMI") retention of new counsel and the COVID-19 pandemic, Defendant Elekta Inc. ("Elekta") respectfully requests that this litigation be stayed in its entirety pending the completion of the *inter partes* reviews ("IPRs").

A stay will allow this Court, the parties, and BMI's new counsel to avoid the burden of litigating issues that are likely to be mooted by the Patent Office's determinations. It is also sensible in view of the Court's pending reconsideration of Elekta Limited's Motion to Dismiss, which may obviate the need for certain discovery. A stay will further provide BMI's new counsel additional time to study the case while allowing both parties to avoid the difficulties of conducting and coordinating discovery during the current pandemic.

A stay will also simplify the issues to be resolved by this Court. A stay will allow the Patent Office's Patent Trial and Appeal Board (PTAB) to apply its expertise to resolve the highly technical issues presented by these validity challenges and thereby provide guidance to the Court for claim construction and other issues that are common to all of the asserted patents.

For all of these reasons, and as discussed in more detail below, Elekta respectfully requests that the Court grant its motion and stay this case pending conclusion of the IPRs.

## II.   HISTORY AND STATUS OF THIS LITIGATION

BMI filed its initial Complaint against Elekta, Inc. and several of its affiliated companies on October 16, 2018, in the District of Delaware, and filed its First Amended Complaint ("FAC") a few weeks later. (Dkt. 1, 9.) In its FAC, BMI alleges that the "Defendants" infringe four BMI patents—U.S. Patent Nos. 6,393,096 ("the '096 Patent"), 6,038,283 ("the '283 Patent"), 7,015,490 ("the '490 Patent") and 7,266,175 ("the '175 Patent")—by making, using, selling, offering to sell, and/or importing radiation therapy machines known as LINACS "in conjunction with" radiation therapy treatment planning software called Monaco®.

On the same day that it initiated this lawsuit against Elekta, BMI filed a similar complaint, also in the District of Delaware, against Varian Medical Systems, Inc. and Varian Medical Systems International AG ("Varian"). *Declaration of Tamara D. Fraizer in Support of Elekta's Motion to Stay Case Pending Inter Partes Review* ("Fraizer Decl."), ¶3. The BMI Complaint against Varian, like its FAC here, alleges that Varian infringes the '096 Patent, the '283 Patent, the '490 Patent, and the '175 Patent. It alleges that Varian infringes by making, using, selling, offering to sell, and/or importing Varian LINACS "in

2

conjunction with" Varian's radiation therapy treatment planning software. *Id.*

On February 6, 2019, all of the Elekta Defendants responded to the FAC by filing Motions to Dismiss. Elekta, Inc. also moved, in the alternative, to transfer the case to the Northern District of Georgia, where Elekta, Inc. is incorporated and headquartered. (Dkt. 11, 14, 17.) In response, BMI agreed to voluntarily dismiss Elekta AB and Elekta Holdings U.S., Inc. (Dkt. 28). Before the Delaware Court addressed the various Motions to Dismiss, however, the Court ordered the parties in BMI's two lawsuits (BMI, Varian, and Elekta) to confer regarding consolidation of the cases and propose a joint schedule. (Dkt. 35.) The Delaware Court subsequently consolidated BMI's cases against Varian and Elekta for pre-trial purposes with a joint Scheduling Order issued on July 15, 2019. (Dkt. 47.) The Delaware Court eventually granted IMPAC Medical System's motion to dismiss and Elekta, Inc.'s motion to transfer (Dkt. 52), and provisionally transferred Elekta Limited to this Court, pending this Court's determination of Elekta Limited's previously filed motion to dismiss. (Dkt. 54.)

BMI's case against Elekta, Inc. and Elekta Limited has been pending in this Court since July 29, 2019. Upon the transfer, the parties agreed to continue following the Scheduling Order issued by the Delaware Court until a new schedule, consistent with this Court's calendar and this District's Local Patent Rules, could be entered. Fraizer Decl., ¶ 4. A new Scheduling Order, however, has

not been entered. *Id.*

Fact discovery began last summer, but remains in the early stages. As required by the District of Delaware's Local Patent Rules, BMI produced copies of the patent files and invention documents in June 2019, and Elekta produced its core technical documents—including the source code for Monaco®, the treatment planning software at issue in this case—in July 2019. *Id.*, ¶5. BMI served requests for production of documents in June 2019; Elekta served document requests and interrogatories in August 2019; and BMI served interrogatories in October 2019. *Id.*, ¶6. Subject to their objections, the parties responded to interrogatories and produced documents. *Id.* BMI served a few further requests in January 2020. *Id.* An agreement regarding the procedures for ESI discovery was reached, but the parties have not yet conducted any ESI discovery. *Id.*, ¶7. No depositions have been noticed or taken. *Id.*, ¶8.

In the fall of 2019, the parties exchanged initial infringement and invalidity contentions for each asserted patent. BMI provided initial infringement contentions on August 30, 2019, identifying the claims alleged to be infringed ("the Asserted Claims"). *Id.,* at ¶9. Pursuant to Local Patent Rule 4.2, on September 27, 2019, Elekta provided noninfringement charts. *Id.* Elekta also provided its initial invalidity contentions on November 8, 2019. *Id.*

On or about October 18, 2019, Elekta and Varian separately filed petitions

with the Patent Trial and Appeal Board (PTAB) of the US Patent and Trademark Office (Patent Office), seeking *Inter Partes* Review (IPR) of all four asserted patents. *Id.,* ¶10-11; 22-23.

By order dated December 27, 2019, this Court denied Elekta Limited's Motion to Dismiss as moot. (Dkt. 98.) Elekta Limited sought reconsideration and the Court extended the time for Elekta Limited to answer the FAC until after the Court decides Elekta Limited's Motion for Reconsideration. (Dkt. 103, 102.) A decision on Elekta Limited's Motion for Reconsideration of Elekta Limited's Motion to Dismiss remains pending.

From December 2019 through March 2020, the parties identified claim terms they believed required construction by the Court (Dkt. 97), and exchanged briefs according to the Scheduling Order issued by the Delaware Court. (Dkt. 97.) Pursuant to that Order, on March 19, 2020, the parties filed consolidations of the claims construction briefing exchanged by the parties. (Dkt. 107, 108.) The parties also filed a stipulation confirming that the claim construction hearing scheduled by the Delaware Court was vacated, and the corresponding technology tutorials were suspended. (Dkt. 106.)

In the stipulation filed on March 19, 2020, the parties also noted that BMI was seeking substitute counsel and agreed to extend the date for substantial completion of documents, from March 30, 2020 to June 1, 2020. *Id.*

Between April 17, 2020 and May 1, 2020, the Patent Office issued institution decisions on the Elekta and Varian petitions filed against the BMI patents. Fraizer Decl., ¶¶13-21, 23, Exs. A-I, K. On May 1, 2020 and May 26, 2020, Elekta met and conferred with BMI regarding BMI's request to extend and clarify the case schedule, and Elekta's request to stay the case pending the IPR proceedings. *Id.,* ¶27. BMI declined to stipulate to a stay. *Id.*

## III.   PATENT OFFICE REVIEW OF THE ASSERTED PATENTS

On October 18, 2019, Elekta, Inc. filed four Petitions with the Patent Office's PTAB, one against each of the asserted patents, seeking *Inter Partes* Review (IPR). Fraizer Decl., ¶10. About the same time, Varian filed six IPRs against the same four patents (splitting its arguments into two petitions for two of the patents). *Id.,* ¶11.

Between April 17, 2020 and May 1, 2020, the PTAB issued "institution decisions" on the Elekta and Varian petitions filed against the BMI patents, indicating which patents it would review, on what grounds, and explaining the basis for its decisions. *Id.,* ¶¶13-21, 23, Exs. A-I, K. In brief:

- The PTAB decided to review the '096 Patent based on the two different petitions filed by Varian. The PTAB decided it could not review the related '283 Patent based on an analogous Varian petition, because of a procedural mistake by Varian in

6

its filing. *Id., ¶¶*21-24, Exs. H-K.

- The PTAB also decided to review the '490 Patent based on Varian's petition, rather than Elekta's petition. *Id., ¶¶*16-17, Exs. D. E.

- The PTAB decided against review of the '096 and '283 Patents based on Elekta's substantially identical petitions because it interpreted the claim language narrowly (supporting Elekta's claim construction and non-infringement positions in this litigation). *Id., ¶¶*18-19, Exs. F, G.

- The PTAB also decided against review of the '175 Patent based on Varian and Elekta's petitions, after assessing and construing the confusing claim term "intensity map" to have its normal meaning (again supporting Elekta's non-infringement position). *Id., ¶¶*13-15, Exs. A-C.

In summary, the PTAB instituted IPR proceedings on the '096 Patent (based on two petitions), declined to institute an analogous petition against the '283 Patent because of a mistake in filing, instituted review of the '490 Patent and, after providing a detailed claim construction, declined to institute on the '175 Patent.

In a separate proceeding, the Patent Office is also assessing invalidity of

numerous claims of the '096 Patent for double-patenting and "obviousness type double patenting" over claims in the previously issued '283 Patent. *Id.* ¶24, Ex. L. The claims being reexamined include Asserted Claims 21, 23, and 40. *Id.*

The following chart shows, for each patent, which of the claims that BMI alleges to be infringed by Elekta are subject to cancellation by the Patent Office:

| Patent | All Patents Directed to Optimization of Radiation Therapy Treatment Plans<br><br>For Each, Claims Are Directed to: | Asserted Claims Under Review by the Patent Office are shown in BOLD |
|---|---|---|
| '096 (Dkt. 9, Ex. B) | Using a cost function to approach correspondence of a treatment plan with a desired CDVH curve or based on partial volume data | **18, 21, 23**, 31, 32, 33, **40, 43, 44**, 45, **46** |
| '283 (Dkt. 9, Ex. A) | Using a cost function to approach correspondence of a treatment plan with a desired CDVH curve or partial volume data | 6, 7, 10, 12, 24, 25, 27, 28, 34, 42, **46** |
| '490 (Dkt. 9, Ex. P) | Choosing collimator angle with cost function having conformality and delivery efficiency sub-functions | **1, 4,** 10, **17, 18, 19** |
| '175 (Dkt. 9, Ex. C) | Controlling trade-off between conformality of dose and delivery efficiency | 1, 8, 11, 13, 19 |

Thus, the Patent Office could cancel most of the Asserted Claims of

the '096 and '490 Patents. In addition, the other two patents are so similar to the '096 and '490 Patents that the Patent Office's decision should impact all of the asserted patents.

The '283 Patent is essentially the parent of the later filed '096 Patent. (Fraizer Decl., ¶25.)[1] Substantial portions of these two patents are nearly identical. *Id.*[2] The '283 and '096 Patents share the same title and have the same co-inventors. Moreover, the Asserted Claims of the '283 Patent are directed to the same subject matter as the '096 Patent, and include the same or similar limitations using the same or similar language. *Id.; see, e.g. Elekta's Claim Construction Brief with Joint Arguments* (Dkt. 108) at 20-22, 37-41, 47-49. Indeed, Asserted Claim 46 of the '283 Patent is ***identical*** to Asserted Claim 40 of the '096 Patent. For all of these reasons, issues relating to the '283 Patent will be informed by the decision about the '096 Patent.

The '175 Patent is related to both of the patents under review by the Patent Office. It is a "follow-on" to the '096 Patent, incorporating the '096 Patent by reference in its entirety and the disclosures in the '096 Patent were relied upon

---

[1] The later-filed '096 Patent does not, however, claim priority to the application that issued as the '283 Patent, as would be the case for formally related patents.

[2] *Compare* '096 Fig. 1 *with* '283 Fig. 1; '096 Fig. 2 *with* '283 Fig. 2; '096 Fig. 5 *with* '283 Figs. 5A–5B; '096 Fig. 6A–6B *with* '283 Fig. 6A–6B; '096 at 1:09–4:09 *with* '283 at 1:09–4:10; '096 at 4:30–67 *with* '283 at 8:30–57; '096 at 5:1–8:59 *with* '283 at 8:60–12:47; '096 at 13:9–35 *with* '283 at 13:54–14:10; '096 at 15:30–16:37 *with* '283 at 15:47–16:25.

heavily during prosecution. *Id.,* ¶26. The '175 Patent also addresses the same fundamental issue as the '490 Patent: the trade-off between the quality of a radiation therapy treatment plan and the efficiency of delivering the treatment. The Asserted Claims of the '175 Patent, just like those of the '490 Patent, require a "cost function" with one component that considers quality and another that considers efficiency. Thus, issues relating to the '175 Patent will be informed by the decisions on both the '096 and the '490 Patents.

## IV.   LEGAL STANDARD

District Courts have broad discretion and inherent authority to stay proceedings "as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). This includes the authority to stay cases pending IPR. *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (noting Congress did not prescribe any particular factors that district courts must consider in deciding whether to stay pending IPR); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (noting statutes authorizing IPR do not need to grant a district court the power to stay related litigation, because "such power already resides with the Court").

In determining whether a stay is in the interests of justice, a District Court must decide whether "the benefits provided by staying the litigation

10

outweigh the potential drawbacks." *Tomco2 Equip. Co. v. Se. Agri-Sys., Inc.*, 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008); *see also, e.g., Intellectual Ventures II LLC v. SunTrust Banks, Inc.*, 2014 U.S. Dist. LEXIS 142295, at *6-*7, Case No. 1:13-cv-02454-WSD (N.D. Ga. Oct. 7,  2014).

Courts in this district and many others typically weigh three factors in their assessment: (1) "whether discovery is complete and a trial date has been set"; (2) "whether a stay will simplify the issues in the case"; and (3) "whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant." *Tomco2 Equip. Co.,* 542 F. Supp. 2d at 1307 (citing *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y.1999)); *see also Murata Mach. USA*, 830 F.3d at 1361 (noting that district courts "typically" analyze stays under this three-factor test).

Courts may consider other factors, as well, such as the burden that the litigation places on the court and the parties. *Murata Mach. USA* at 1361 ("Attendant to the district court's inherent power to stay proceedings is the court's discretionary prerogative to balance considerations beyond those captured by the three-factor stay test. [For example,] [t]he burden litigation places on the court and the parties when IPR proceedings loom is one such consideration . . . ."); *see also IOENGINE, LLC v. PayPal Holdings, Inc.,* 2019 U.S. Dist. LEXIS 141545, at *11-*12, Case Nos. 18-452-WCB; 18-826-WCB (D. Del. Aug. 21, 2019) (explaining

that because one of the benefits of IPR is "relieving the courts of some of the burdens of deciding issues of obviousness and anticipation, and saving the courts from having to adjudicate infringement claims based on patents of questionable validity," this fourth "burden" factor is properly and commonly considered in assessing a motion to stay pending IPR).

## V.    ARGUMENT

This action should be stayed pending resolution of the instituted IPR proceedings. Each of the factors considered by district courts in similar circumstances favors a stay, BMI has just retained new counsel, the current Covid-19 pandemic is heavily impacting civil litigation in this District, and the benefits provided by staying the litigation clearly outweigh any potential drawbacks.

### A.    The status of the instant action weighs in favor of a stay.

In determining whether a stay is appropriate, one significant factor is the progress of the litigation, in particular, whether discovery is complete and a trial date has been set. *Tomco2 Equip. Co.*, 542 F. Supp. 2d at 1307; *see also Ethicon LLC v. Intuitive Surgical, Inc.,* 2019 US Dist LEXIS 45452, at *6-*7, Case No. 17-871-LPS (D. Del. March 20, 2019).

Here, discovery has only just begun. Although some documents and Elekta's source code for Monaco were exchanged or otherwise made

available for inspection, the parties have yet to exchange ESI discovery or complete their meet and confer regarding prior written discovery requests. No depositions have occurred, and expert discovery has not started. Indeed, BMI's new counsel only appeared in March 2020 and recently requested a further extension of the existing discovery deadlines into next year. No trial date has been set, nor has the Court held a Claim Construction hearing or issued a Claim Construction Order. Moreover, a revised scheduling order, consistent with the local rules of this Court, remains to be entered. Therefore, full consideration of this factor strongly favors a stay.

Prior decisions of Courts in this District fully support the entry of a stay in this instance. In *Interface, Inc. v. Tandus Flooring US, LLC,* the Court found this factor favored a stay where a trial date had not been set and the close of discovery was three months away. 2013 U.S. Dist. LEXIS 158608, at *13, Case No. 4:13-cv-46-WSD (N.D. Ga. Nov. 5, 2013) (citing *Tomco2 Equip. Co.*, 542 F. Supp. 2d at 1312).

In *Tomco2 Equip. Co.,* the Court found this factor favored a stay where a trial date had not been set and discovery had not closed. Even though it was relatively late in discovery, the Court noted that both parties sought to extend discovery. 542 F. Supp. 2d at 1312.

In *Graywire, LLC v. Ciena Corp.*, the Court found this factor favored a stay

13

where the parties had not yet conducted substantial discovery, a trial date had not been set, and the parties had not yet filed dispositive motions. 2009 U.S. Dist. LEXIS 131906, at *21, Case No. 1:08-cv-2993-BBM (N.D. Georgia July 17, 2009) (citing *Southwire Co. v. Cerro Wire, Inc.,* 2009 U.S. Dist. LEXIS 131922, at *12-*13, Case No. 3:08-cv-92-JTC (N.D. Ga. 2009)). Other than Elekta Limited's motion to dismiss for lack of personal jurisdiction, no dispositive motions have been filed in this case by either party.

Even though claim construction *briefing* is complete in this case, this fact does not change the assessment of the "progress" factor. The court has not held a hearing on claim construction nor has it issued a claim construction order. *See Convergence Techs. (USA), LLC v. Microloops Corp.*, 2012 U.S. Dist. LEXIS 51794, at *12, No. 5:10-cv-02051-EJD (N.D. Cal. April 12, 2012) (finding the completion of claim construction briefing had "only minimal impact" on its analysis, because the case had not yet reached the "point of no return" in terms of its procedural posture).

The Court also has not yet issued a decision on Elekta Limited's request for reconsideration of the Court's Order finding its Motion to Dismiss for Lack of Personal Jurisdiction to be moot, and Elekta Limited has yet to provide an Answer to the complaint in this action. (Dkt. 103, 102.)

14

Should the Court dismiss Elekta Limited, a UK company, the scope of document collection and discovery in this action would be reduced substantially. A stay pending resolution of Elekta Limited's Motion to Dismiss would obviate the needsfor discovery from Elekta Limited, as noted in the Court's Standing Order (page 4). This is another reason the status of the case favors a stay.

### B.    A stay will simplify the issues before this Court.

Another factor considered is whether a stay will simplify the issues in the case. *Tomco2 Equip. Co.*, 542 F. Supp. 2d at 1307.

Here, a stay will allow the Patent Office to determine the validity of most of the Asserted Claims in two of the four asserted patents. If the PTAB finds the Asserted Claims invalid, and the decision is either not appealed or upheld on appeal, all of the issues relating to each of those claims will be eliminated from the case. In its institution decisions, the PTAB already found there was a "reasonable likelihood" that at least one claim in each IPR would be cancelled.

In addition, the PTAB's opinions will be helpful to the Court and the parties in assessing other Asserted Claims and other invalidity issues. The PTAB's determinations and opinions may even foster resolution or settlement of the case in its entirety. At the very least, and regardless of the outcome, a stay pending the issuance of Final Written Decisions in the IPRs will reduce the number and/or scope of issues to be addressed in this litigation because Elekta is joining the IPRs

and therefore will be estopped from making the same arguments in this litigation.

Thus, and as explained in more detail below, a stay will usefully simplify the issues before this Court.

### 1. The Patent Office will decide the validity of most of the asserted claims in two of the asserted patents.

Simplification does not require that all, or even a majority, of the claims asserted in a district court case be under review by the Patent Office. *Graywire, LLC,* 2009 U.S. Dist. LEXIS 131906, at *21 ("[S]implification of issues can occur even when *all* of the issues potentially at stake will not be resolved.") (emphasis in original); *Intellectual Ventures II LLC,* 2014 U.S. Dist. LEXIS 142295 at *7-*8 ("Even if the PTAB concludes that some, but not all, the Patents are invalid, the scope of this case may be significantly narrowed.").

Here, the Patent Office is reviewing two of the four patents-in-suit and will decide the validity of five of the six Asserted Claims in the '490 Patent in the pending IPR proceeding. It will decide the validity of seven of the eleven Asserted Claims in the '283 Patent, four of them in two IPR proceedings and another three in a reexamination proceeding. This is a substantial portion of the Patents and the Asserted Claims in this case.

These statistics, alone, indicate a simplification of issues. *See, e.g.,*

16

*Intellectual Ventures II, LLC,* 2014 U.S. Dist. LEXIS 142295, *7, *10 (granting stay where instituted IPRs addressed two of five patents-in-suit); *IOENGINE*, 2019 U.S. Dist. LEXIS 141545, at *8 (granting stay where instituted IPRs addressed one of three patents-in-suit and 25 percent of Asserted Claims); *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 357 (D. Mass. 2015) (granting stay where instituted IPRs addressed two of eleven patents-in-suit and 14 percent of Asserted Claims).

### 2. The Patent Office's determinations on the '096 Patent claims should apply to similar '283 Patent claims

The Patent Office's decisions on the validity of claims in the '096 Patent will also simplify the issues regarding claims asserted in the '283 Patent.

As noted above, the '096 and '283 Patents are substantially similar. Importantly, the Asserted Claims in the '283 Patent are very similar to claims of the '096 Patent that are under review, sometimes differing by only a few words or an added limitation.  In addition, prior art and grounds being examined in the IPRs on the '096 Patent are applicable to the '283 Patent.  For these reasons, findings in this IPR regarding the validity of the '096 Patent claims may apply equally, or at least substantially, to Asserted Claims in the '283 Patent.

Indeed, if the '096 Patent claims are invalidated in this IPR, the Court may be able to adopt and apply the Patent Office's reasoning to invalidate Asserted Claims of the '283 Patent. *See ACQIS*, 109 F. Supp. 3d at 357 (noting the "similarity of inventive disclosure" and "similar specifications" of the patents

17

under review with other patents-at-issue, as well as overlap in the "inventive elements" in claims under review with other claims).

At the very least, the Patent Office's interpretation of claim limitations that occur in both the '096 and '283 Patents will be helpful to the Court in assessing the Asserted Claims of the '283 Patent. Similarly, the Patent Office's interpretation of publications that are prior art to both patents will be helpful to the Court in assessing that prior art with respect to the Asserted Claims of the '283 Patent.

### 3. The Patent Office's analysis will simplify assessments of all Asserted Patents and all Asserted Claims

The Patent Office's determinations on certain claims in the '096 and '490 Patents will also simplify the assessments of Asserted Claims in the other Asserted Patents.

As noted above, all of the patents-at-issue focus on the same general subject matter—optimization of radiation therapy treatment planning. This is a sophisticated and challenging area of technology, as indicated by the PTAB's determinations that the level of ordinary skill in the art would require "at least a master's or doctoral degree in radiation dosimetry, physics, medical physics, or medicine, or equivalent disciplines" and "three years of clinical experience in radiation treatment planning." (Fraizer Decl., ¶16, Ex. D at 7; ¶20, Ex. H at 9; ¶21, Ex. I at 9.) The PTAB judges have

18

science and engineering backgrounds in the relevant technology, as well as extensive experience with patents, making it highly likely that their interpretations of this challenging subject matter will be of substantial help to this Court in assessing the interpretation, validity, and infringement of the patents-at-issue. *Tomco2 Equip. Co.,* 542 F. Supp. 2d at 1309 ("'[T]he technical expertise provided by the [Patent Office] proceeding will be helpful to the Court on any issues that remain.'"); *Graywire, LLC,* 2009 U.S. Dist. LEXIS 131906 at *20-*21 (noting that if the claims are upheld, "the court will have the assistance of 'the expert view of the [Patent Office]' to facilitate its analysis" of the patent claims).

In addition, the PTAB will be able to provide useful assessments and interpretations of prior art that is shared between the patents-at-issue. For example, prior art being considered in one IPR against the '096 Patent was relied upon in the mis-filed petition against the '283 Patent. In addition, the primary prior art reference cited in two of the petitions against the '175 Patent (Webb 2001) is being relied upon in the IPR of the '490 Patent. The PTAB's analysis of and decisions on the '096 and '490 Patents will address relevant features of these prior art references, and will be of general help to this Court in assessing the '283 and '175 Patents in view of these references. *See In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985) ("[A]n auxiliary function [of the Patent Office's review] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration").

### 4.    Elekta's validity defenses in the litigation will be limited by IPR estoppel.

The benefits derived from the simplification of issues resulting from a stay do not depend on the outcome of IPR proceedings. Even a decision by the PTAB to sustain any claim will simplify issues, because the scope of Elekta's prior art-based invalidity defenses will be narrowed by IPR estoppel. *See* 35 U.S.C. § 315(e)(2); see also *Tomco2 Equip. Co.,* 542 S. Supp. 2d 1309 (noting "the inter partes reexamination is very likely to simplify issues before this Court because the defendant cannot relitigate any of the issues determined by the PTO"); *Graywire, LLC,* 2009 U.S. Dist. LEXIS 131906 at *19-*20 (noting that the estoppel "presents a 'compelling reason' to grant a stay").

Elekta will be estopped from arguing the invalidity of the challenged claims in this Court based on the same prior art publications presented in the IPR, as well as on any other prior art publications actually known or that reasonably should have been known at the time of filing the IPR Petition. This is because Elekta recently moved to join the instituted IPRs by filing "copycat" petitions based on the same grounds as the instituted Petitions. Elekta agreed to serve in an understudy role, allowing Varian's counsel to take the lead in the joined IPR proceedings, but Elekta will assume the primary role should Varian's counsel stop actively participating in the IPR

proceeding. Such motions, with the agreement to be estopped in the same way as the initial filer, are granted as a matter of course. Thus, even if the PTAB sustains the challenged claims, a stay will simplify the issues in the instant action by narrowing Elekta's prior art-based invalidity defenses.

## C.     A stay will reduce the resource burden on this Court and the parties.

The Patent Office's determinations may not only reduce the number of Asserted Claims, they will address technical issues, patent disclosures, and prior art shared between the various patents-at-issue. In so doing, determinations and findings made in the IPRs may eliminate disputes relating to claim construction and the prior art, reduce the complexity, cost and the length of the litigation, and help the Parties and this Court focus the issues, defenses, and evidence to be presented at trial. *See, Interface, Inc.*, 2013 U.S. Dist. LEXIS 158608 at *12 (citing *Tomco2 Equip. Co.*, 542 F. Supp. 2d at 1308).

Should this case not be stayed, the parties will proceed with fact and expert discovery on issues that may be mooted or changed by the determinations of the Patent Office. *Graywire, LLC,* 2009 U.S. Dist. LEXIS 131906 at *17 ("[A]bsent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary . . . ."). For example, the PTAB's invalidation of any Asserted Claims would eliminate the need for expert discovery as to those claims, while the PTAB's sustaining of any claims could drastically reduce the prior art to be

included in fact and expert discovery. In either case, the PTAB's

determinations would moot much of the work the parties and their experts

would otherwise have to complete before trial, and eliminate repeating

aspects of fact and expert discovery.

For example, the patentee may amend its claims as part of the IPRs.

This could present new issues of claim construction requiring further

briefing and decision by the Court, or eliminate issues previously presented.

In the former case, the Court may need to repeat the process of claim

construction; in the latter case, the Court will have wasted precious judicial

resources deciding issues that ultimately did not matter. *Tomco2 Equip. Co.,*

542 S. Supp. 2d at 1308-9 ("[I]f the Court makes a determination with regard

to the original patent claim and the claim is changed, then the Court's

analysis is for naught."); *Graywire, LLC,* 2009 U.S. Dist. LEXIS 131906 at

*17 ("[A]bsent a stay, . . . the court may waste time examining the validity

of claims which are modified or eliminated altogether").

> **D.      The impact of COVID-19 on this Court and civil cases in general further supports granting a stay at this time.**

The current pandemic has significantly impacted the scheduling and

handling of criminal and civil cases in this District. See General Order 20-01

and the First, Second, Third and Fourth Amended General Orders 20-01. In

view of the existing (and likely future) delays occasioned by the COVID-19

pandemic, the need to focus limited judicial resources on the speedy resolution of criminal matters is likely to continue for some time and will require the Courts to prioritize criminal cases over civil matters such as this case for patent infringement. This unprecedented situation and the lack of any real prejudice to BMI, as discussed more fully in the next section, further support the entry of a stay in this case at this time.

In addition, if this case is not stayed, the different restrictions on non-essential travel and meetings during this pandemic imposed by the Countries, States and local governments where the parties and their counsel are located will create significant logistical problems. Elekta's current counsel, for example, are still subject to "stay at home orders" that prohibit all non-essential travel. As mentioned earlier, no depositions have taken place in this case and no ESI information exchanged. Under the current COVID-19 restrictions in place for Elekta Inc., the Company does not have its normal capabilities to look for and collect any ESI information ultimately agreed to for exchange. Should this case be stayed until the final disposition of the pending IPRs, there is a substantial likelihood that any COVID-19 related logistical difficulties will be eliminated or substantially reduced.

**E.    A stay would not cause BMI to suffer undue prejudice or give Elekta an unfair tactical advantage.**

The PTAB's decisions in the IPRs should issue by May 3, 2021.[3] BMI's new counsel has already approached Elekta's counsel about extending the discovery cut-off well into 2021, and BMI will not suffer undue prejudice or suffer a tactical disadvantage by the requested stay.

The mere delay to these proceedings, on its own, does not establish undue prejudice to BMI, especially in view of the benefits of the Patent Office's review. *See, e.g., Interface, Inc.*, 2013 U.S. Dist. LEXIS 158608 at *15 (noting that any delay that may occur while the PTO review is processed is outweighed by the benefits of awaiting PTO review).

While BMI claims that its treatment planning software competes with Elekta's Monaco treatment planning software, BMI does not purport to sell the LINACs the software is used on. Moreover, BMI has produced no discovery to date suggesting that it is presently active in the U.S. market for external beam radiation therapy, let alone that it is Elekta's direct competitor. Despite filing this case almost 2 years ago, BMI has never sought preliminary injunctive relief and money damages appear to be the

---

[3] The PTAB is generally required to complete IPR proceedings within one year of institution. 37 C.F.R. § 42.100(c). The deadlines for the PTAB to issue final written decisions under this statute, given the dates of its institution decisions, are April 26, 2021 for the '490 petition, and May 3, 2021 for the '096 petitions.

preferred remedy. Therefore, BMI will not suffer any irreparable harm from a stay of the case. *Tomco2 Equip. Co.* at 1308 (noting "'the availability of money damages [and possible interest] is sufficient to protect plaintiff from prejudice'").

There is also no dilatory motive in Elekta's current efforts to join the IPRs. Elekta filed its own IPR petitions within the statutory period, has timely moved to join the IPRs that were instituted, and now promptly files this motion to stay. The benefits of waiting for the properly requested review of the Patent Office, including the significant simplification of issues, substantially outweighs the relatively short delay that would result from a stay of this litigation. *See Interface, Inc.,* 2013 U.S. Dist. LEXIS at *15-*16 (finding similarly).

## VI.   CONCLUSION

For all of the foregoing reasons, Elekta respectfully requests this Court to stay this action in its entirety pending the completion of the IPR proceedings on the '490 and '096 Patents, including the completion of any appeals.

Respectfully submitted,

Dated: May 29, 2020

By: */s/ Ronald S. Lemieux*
Petrina A. McDaniel
Georgia Bar No. 141301
petrina.mcdaniel@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1230 Peachtree Street NE
Suite 1700
Atlanta, GA 30309
Telephone: (678) 272-3224
Facsimile: (678) 272-3211

Ronald S. Lemieux *(Admitted Pro Hac Vice)*
ronald.lemieux@squirepb.com
Tamara D. Fraizer *(Admitted Pro Hac Vice)*
tamara.fraizer@squirepb.com
Vid R. Bhakar *(Admitted Pro Hac Vice)*
vid.bhakar@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1801 Page Mill Road, Suite 110
Palo Alto, CA 94304-1043
Telephone: (650) 956-6500
Facsimile: (650) 843-8777

Christopher W. Adams *(Admitted Pro Hac Vice)*
christopher.adams@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, DC 20037
Telephone: (202) 457-6326

Theresa Rakocy *(Admitted Pro Hac Vice)*
theresa.rakocy@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower 127 Public Square
Cleveland, OH 44114
Telephone: (216) 479-8500

26

## CERTIFICATION UNDER L.R. 7.1.D.

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is a computer document and was prepared in Times New Roman 14 point font, as mandated in Local Rule 5.1.C.

*Ronald S. Lemieux*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the **ELEKTA'S MOTION TO STAY PENDING *INTER PARTES* PREVIEW** to all counsel of record via the Court's CM/ECF system.

This 29th day of May, 2020.

*Ronald S. Lemieux*

010-9072-3782/4/AMERICAS

28