**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| BEST MEDICAL INTERNATIONAL, INC., | ) ) ) ) C.A. No. 1:19-cv-03409-MLB |
| Plaintiff, | ) |
| v. | ) ) |
| ELEKTA INC. and ELEKTA LIMITED, | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF BEST MEDICAL INTERNATIONAL, INC.'S**
**OPPOSITION TO DEFENDANTS' MOTION TO STAY**

OF COUNSEL:

Steven A. Maddox
Anthony H. Son
Jeremy J. Edwards
Matthew C. Ruedy
Kaveh V. Saba
MADDOX EDWARDS, PLLC
1900 K Street NW, Suite 725
Washington, DC 20006
202.830.0238
smaddox@meiplaw.com
ason@meiplaw.com
jedwards@meiplaw.com
mruedy@meiplaw.com
ksaba@meiplaw.com

June 12, 2020

CLAYTON, MCKAY & BAILEY P.C
/s/ Brannon C. McKay

_____

Brannon C. McKay
Georgia Bar No. 558603
800 Battery Ave. SE, Suite 100
Atlanta, Ga 30339
(404) 414-8633
brannon@cmblaw.com

*Attorneys for Plaintiff Best Medical International, Inc.*

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT.............................1

II.     FACTUAL BACKGROUND..........................................................3

        A.      The Directly Competitive Relationship of the Parties .........................3

        B.      The Asserted Patents, the Asserted Claims, and the IPRs ...................5

III.    ARGUMENT.......................................................................8

        A.      A Stay Would Not Substantially Simplify the Issues for Trial............8

        B.      Even as to IPR Claims, the IPRs Will Not Simplify the
                Litigation. .............................................................16

        C.      A Stay Would Unduly Prejudice Best.................................17

        D.      Elekta Has Failed to Demonstrate that Denying its Motion
                Would Cause Hardship or Inequity....................................21

        E.      The Status of the Litigation and IPRs Does Not Favor a Stay...........22

        F.      COVID-19 Should Not Prevent this Case from Proceeding.............23

IV.     CONCLUSION..................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS, LLC v. EMC Corp.*,
109 F. Supp. 3d 352 (D. Mass. 2015) ...............................................................11, 12

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. CV 15-1108-LPS-CJB, 2016 WL 4474340 (D. Del. July 14, 2016) ..............................21

*Cooper Notification, Inc. v. Twitter, Inc.*,
C.A. No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010)..................................17, 18

*Copy Prot., LLC v. Netflix, Inc.*,
C.A. No. 14-365-LPS, 2015 WL 3799363 (D. Del. June 17, 2015)..................................22, 23

*Ethicon LLC v. Intuitive Surgical, Inc.*,
C.A. No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) ................................10, 21

*Ever Win Int'l Corp. v. Radioshack Corp.*,
902 F. Supp. 2d 503 (D. Del. 2012)................................................................21

*Foods, LLC v. Hamilton Beach Brands, Inc.*,
No. 16-CV-41 (GMS), 2017 WL 10619854 (D. Del. Mar. 9, 2017)......................................18

*Intellectual Ventures I LLC v. Toshiba Corp.*,
C.A. No. 13-453-SLR/SRF, 2015 WL 3773779 (D. Del. May 15, 2015) ........................19, 20

*Intellectual Ventures II LLC v. Fedex Corp.*,
No. 2:16-cv-00980-JRG, 2017 WL 4812434 (E.D. Tex. Oct. 24, 2017) ................................10

*Intellectual Ventures II LLC v. Suntrust Banks, Inc.*,
No. 1:13-cv-02454, 2014 WL 5019911 (N.D. Ga. Oct. 7, 2014) ...........................................12

*InterMetro Industries Corp. v. Enovate Medical, LLC*,
CA 3:13-02854, 2017 WL 901100 (M.D. Pa. Mar. 7, 2017).............................................9, 10

*Invensas Corp. v. Samsung Elecs. Co., Ltd.*,
C.A. No. 17-1363-MN-SRF, 2018 WL 4762957 (D. Del. Oct. 2, 2018) ................................17

iii

*IOENGINE, LLC V. Paypal Holdings*,
   CA. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019)......................................11, 12

*Murata Mach. USA v. Daifuku Co.*,
   830 F.3d 1357 (Fed. Cir. 2016)....................................................................................................8

*Nexans, Inc. v. Belden Inc.*,
   C.A. No. 12-1491-SLR-SRF, 2014 WL 651913 (D. Del. Feb. 19, 2014) ...............................22

*Personalweb Techs. v. Google Inc.*,
   CA 5:13-CV-01317-EJD, 2014 WL 4100743 (N.D. Cal. Aug. 20, 2014) ...............................10

*Raindance Technologies, Inc. v. 10X Genomics*,
   C.A. No. 15-152-RGA (D. Del. Apr. 5, 2016) .........................................................................15

*Realtime Data LLC v. Actian Corp.*,
   C.A. No. 6:15-cv-463-RWS-JDL, 2016 WL 3277259 (E.D. Tex. June 14,
   2016) .....................................................................................................................................19, 20

*Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp.*,
   No. CV 16-284-LPS, 2018 WL 3046511 (D. Del. June 20, 2018)......................................17, 22

*Tomco2 Equip. Co. v. Southeastern Agri-Sys., Inc.*,
   542 F. Supp. 2d 1303 (N.D. Ga. 2008) ......................................................................................9

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
   193 F. Supp. 3d 345 (D. Del 2016)...........................................................................................16

*TruePosition, Inc., v. Polaris Wireless, Inc.*,
   C.A. No. 12-646-RGA/MPT, 2013 WL 5701529 (D. Del. Oct. 21, 2013) .............................19

**Statutes**

35 U.S.C §112....................................................................................................................................13

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The Court should deny Elekta's motion to stay.  First, a stay will not meaningfully simplify this case.  No matter what happens at the PTAB, *none* of the four asserted patents can be eliminated from this case.  Indeed, a 73% *supermajority* (25 of 33) asserted claims are not subject to any *inter partes r*eview ("IPR").  Beyond that, Elekta is asserting a litany of defenses that will not be resolved either way by the IPRs.

Elekta's simplification argument appears to stem from its misleading generalization that the asserted patents relate to the same general technical field. This argument misses the mark.  The two IPR patents are not in the same family as the two non-IPR patents, and Elekta's own contentions and IPR petitions demonstrate that the invalidity analyses as to each will be different.  Further, there is no unresolved question of claim construction affecting any of the asserted claims in the non-IPR patents.

Second, the prejudice to Best[1], as a direct competitor of Elekta in the field of the patents, weighs against a stay—especially taking into consideration Elekta's

---

[1] For simplicity herein, "Best" refers to plaintiff Best Medical International, Inc. and any prior companies from which it purchased assets related to the Radiation Oncology Division of Nomos.

tactical delay in filing its IPR petitions. Best directly competes with Elekta, a significant player in the relevant market. Elekta's infringing activity has hindered and continues to hinder Best from growing its business, while also interfering with Best's licensing activity on the unexpired patents. The damage of delay to Best and to the competitive marketplace is irreparable.

Elekta's motion is part of a pattern of delay by Elekta for its own tactical business advantage, and not the efficient administration of justice. This pattern began with Elekta's decision to delay filing its IPR petitions until literally the last few hours on the 365th day of the one-year IPR jurisdictional deadline from the service of the complaint. Elekta's IPR petitions were so lacking in merit that the PTAB refused to institute a single one. Elekta now seeks a stay based on petitions filed by Varian, another defendant in a different action. Even as to those non-party petitions, however, Elekta waited nearly a month from institution to seek leave to join in those instituted IPRs and file its motion to stay. Indeed, Elekta waited over a month after it initially indicated to counsel for BMI that it intended to file a joinder petition in those IPR proceedings and seek a stay of this litigation. Elekta's pattern of delay is further manifest in the nature of the stay sought—that is, through the end of not just the IPR process, but also through any appeal.

2

Third, the stage of these proceedings and the timing of the expected final IPR decisions does not favor a stay.  At approximately nineteen months pendency, this case is farther along than the relative infancy that might weigh in favor of a stay.  The parties have engaged in jurisdictional motion practice, are well into written and document discovery, and completed claim construction briefing months ago.  Further, there will be ample time to incorporate any decisions made in the IPRs before the close of discovery.  Accordingly, and as explained below, Elekta's motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    The Directly Competitive Relationship of the Parties

Best and Defendants (collectively, "Elekta") directly compete in the market for radiotherapy systems.  (Rowden Decl.[2] at ¶¶ 3, 9.)  In the late 1990's and early 2000's, Best focused on selling Treatment Planning Systems ("TPSs") for radiotherapy.  (*Id*. at ¶ 4–6.)  In general terms, TPSs were (and are), the brains behind the delivery of radiation by the large, expensive linear accelerator devices used to deliver radiation therapy to cancer patients.  (*Id*. at ¶ 4.)  While Best did not

---

[2] Citations to "Rowden Decl." are to the Declaration of Thomas Rowden, filed herewith.

sell the accelerator devices themselves, Best did sell its proprietary, market-leading TPS called Corvus®, which came to incorporate embodiments of the inventions claimed in at least some of asserted patents.  (*Id*. at ¶¶ 5–6; D.I. 9 at ¶ 6.)  The Corvus® TPS could be integrated into (and thereby improve performance of) linear accelerators sold by other companies.  (Rowden Decl. at ¶ 6.)  Specifically, the Corvus® TPS permitted accelerators made by other companies to provide a specific kind of radiotherapy known as Intensity Modulated Radiation Therapy ("IMRT").  (*Id*.)

While Best focused on developing its Corvus ® TPS, Elekta in the late 1990's or early 2000's was one of a few such companies selling linear accelerators. (*Id*. at ¶ 7.)  Elekta's linear accelerators came with Elekta's own TPS, but Elekta's TPS at the time could not provide IMRT.  (*Id*.)  Accordingly, Best and Elekta collaborated closely so that Best could design its Corvus® TPS to work with Elekta's linear accelerator devices.  (Rowden Decl. at ¶ 7.)  Once Corvus® was validated as working with Elekta's accelerators, Elekta could tout its accelerators as upgradable to IMRT through purchase of Corvus®, and Best could sell Corvus® to users of Elekta's accelerators.

Eventually, Elekta updated its own TPS so that its accelerators could provide IMRT without the user having to purchase Corvus®.  (Rowden Decl. at ¶ 8.)

4

Moreover, Elekta bundled its new IMRT-enabled TPS with sales of its linear accelerators. (*Id*.) Over time, as Elekta became a leading seller of radiotherapy systems, the fact that Elekta's systems came with IMRT-enabled TPS cut into Best's sales of Corvus®. (*Id*. at ¶ 9.) Nevertheless, to this day, Best continues to develop improvements to Corvus® and is currently offering Corvus® for sale in the United States. (Rowden Decl. at ¶ 9; D.I. 9 at ¶¶ 27, 32–37.) In this manner, Best and Elekta are direct competitors in the market to which the asserted patents pertain. (Rowden Decl. at ¶ 3.)

### B.   The Asserted Patents, the Asserted Claims, and the IPRs

Best initiated this action on October 16, 2018 and asserts that several of Elekta's products infringe 33 claims (the "asserted claims") across the four asserted patents. (D.I. 1; D.I. 9; Ex. 1; Ex. 2.) [3] None of the asserted patents share a common specification or are part of the same patent family, although the '283 and '096 patents do share portions of their specifications. Those two patents are expired, but the '175 and '490 patents do not expire for several years.

---

[3] Unless otherwise noted, all exhibits referenced herein are attached to the Declaration of Jeremy J. Edwards, filed herewith.

The parties and the Court have invested substantial resources litigating this case over the last 19 months.  The parties have engaged in jurisdictional motion practice, served and responded to many written discovery requests, had their experts spend substantial time inspecting each other's source code, produced many documents, and exchanged invalidity and infringement contentions.  Further, claim construction briefing was completed in March 2020, more than three months before this motion is set to be fully briefed.  (D.I. 107.)

Elekta waited a full year to file its IPR petitions.  Then, at the eleventh hour on October 18, 2019, Elekta filed four IPR petitions against the asserted patents.  None were instituted.  Rather, on April 17, April 24 and May 1 of this year, the PTAB declined to institute all four of Elekta's IPR petitions.  In the same timeframe, the PTAB declined to institute three other IPR petitions submitted by Varian, but instituted three other IPRs on petitions from Varian.[4]

---

[4] Elekta may suggest that its delay does not weigh against a stay, because it filed its petitions less than two months after learning which claims in each patent Best was asserting in this litigation.  But the set of claims Elekta challenged in its IPR petitions was not tailored to match the then-asserted claims.  (Ex. 3; Ex. 4; Ex. 5; Ex. 6  (demonstrating that Elekta challenged 9 unasserted claims and did not challenge three asserted claims of the '283 patent).)

Elekta is now seeking to join the three instituted Varian IPRs.  Even assuming the PTAB permits this, only two of the four asserted patents would be subject to IPR, namely, the '096 patent and the '490 patent.  The other two patents cannot be subject to IPR, because all IPR petitions on those patents (by both Elekta and Varian) were denied.  Further, only 9 of the 33 asserted claims in this case (27%) would be subject to IPR.  Moreover, even assuming the PTAB were to invalidate all the claims that are subject to IPR, *none of the asserted patents would be eliminated from this case*.

The table below shows which asserted patents and claims are subject to IPR:

| Patent | IPR Number | IPR Status | Asserted Claims Subject to IPR | Asserted Claims **Not** Subject to IPR |
|--------|-----------|-----------|--------------------------------|----------------------------------------|
| '175 | 2020-00053 2020-00077 2020-00073 | Not Instituted | **None** | 1, 8, 11, 13, 19 (all) |
| '283 | 2020-00075 2020-00070 | Not Instituted | **None** | 6, 7, 10, 12, 24, 25, 27, 28, 34, 42, 46 (all) |
| '096 | 2020-00071 2020-00072 | Instituted | 18, 43, 44, 46 | 21, 23, 31, 32, 33, 40, 45 |
| | 2020-00074 | Not Instituted | | |
| '490 | 2020-00076 | Instituted | 1, 4, 17, 18, 19 | 10 |
| | 2020-00067 | Not Instituted | | |
| **Totals** | | | 9 | 24 |

Final decisions on the instituted IPRs are expected in late April and early
May of 2021.  Discovery in this case will likely not have closed by then.
Accordingly, the parties will have time to incorporate the PTAB's decisions into
dispositive motions and trial.

## III.   ARGUMENT

As part of its inherent power to conserve judicial resources, the Court has
discretion in determining whether to grant a stay pending IPR.  In making this
determination, courts typically consider three factors: (1) whether a stay will
substantially simplify the issues for trial; (2) the status of the litigation, and (3)
whether a stay would cause the non-movant to suffer undue prejudice or allow the
movant to gain a clear tactical advantage. *Murata Mach. USA v. Daifuku Co.*, 830
F.3d 1357, 1361 (Fed. Cir. 2016).  As explained below, none of these factors favor
a stay in this case, and so the Court should deny Elekta's motion.

### A.     A Stay Would Not Substantially Simplify the Issues for Trial.

A stay will not substantially simplify this case, because a supermajority of
asserted claims (25 of 33, or 73%) will not be subject to review by the PTO.
Indeed, ***regardless of what happens at the PTAB, none of the asserted patents
can be eliminated from this case***.  This is because all four asserted patents contain

8

at least one asserted claim that is not subject to IPR.  Further, that supermajority of non-IPR claims is spread across all four patents, none of which are in the same patent family or shares a specification with another.  Two of the four asserted patents are not subject to IPR, and account for most of the non-IPR claims this Court must address (16 of 24).

This extraordinary mismatch arises from Elekta's failure to persuade the Patent Office to review even one of the four asserted patents.  This motion is premised instead on Elekta joining the IPRs instituted upon petitions by non-party Varian.  Those IPRs address only the claims Varian challenged in its petitions. The partial overlap between the IPR claims and the claims asserted against Elekta's products in this case is purely coincidental.

As this Court has acknowledged, "many courts deny stays when the reexamination will not resolve all the issues in the litigation." *Tomco2 Equip. Co. v. Southeastern Agri-Sys., Inc.*, 542 F. Supp. 2d 1303, 1310 (N.D. Ga. 2008). Where, as here, not every asserted claim is subject to Patent Office review, courts have both granted and denied stays.  The results in these cases, however, cannot be attributed solely to the simplification factor.  Contrary to Elekta's suggestion, there is no rule that a 25% (or any other percentage) overlap in claims favors granting a

stay.  The cases simply provide examples of how courts assess the extent to which a case really will be simplified by PTAB review of fewer than all asserted claims.

The case law reflects a focus on the number of asserted claims versus claims subject IPR, as a useful initial proxy for whether a majority of the case really would be simplified by a stay.  For instance, in *InterMetro Industries Corp. v. Enovate Medical, LLC*, CA 3:13-02854, 2017 WL 901100, at *3 (M.D. Pa. Mar. 7, 2017), the court found no substantial simplification, based upon fact that "regardless of the [IPR appeal] decision, a ***majority*** of the claims will still remain which necessitate that this case move forward." *Id.* at *3 (emphasis added). Similarly, in *Intellectual Ventures II LLC v. Fedex Corp.*, No. 2:16-cv-00980-JRG, 2017 WL 4812434 (E.D. Tex. Oct. 24, 2017), the court found no substantial simplification, based on the fact that "the PTAB has declined to institute on a ***majority*** of the Asserted Claims." *Id.* at *1 (emphasis added).[5]

---

[5] Conversely, the same analysis often leads courts to find simplification to favor a stay where a majority of asserted claims are subject to PTO review, or are in the same patent family as claims subject to review. *See, e.g.*, *Personalweb Techs. v. Google Inc.*, CA 5:13-CV-01317-EJD, 2014 WL 4100743, at *5 (N.D. Cal. Aug. 20, 2014) (finding simplification where "the vast ***majority*** of claims asserted against [defendants] are subject to these PTO proceedings"); *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 WL 1276029, at *1–3 (D. Del. Mar. 20, 2019) (finding simplification, emphasizing repeatedly that ***14 of 15 (90%)*** of asserted claims were subject to IPR).

In addition to quantifying the proportion of asserted claims that are not subject to IPR, courts also look for evidence (not mere attorney argument) that resolution of the IPR claims will simplify resolution of the non-IPR claims. Courts have found two types of such evidence to be sufficient: (1) when the IPR patents and non-IPR patents are from the same patent family and have identical specifications; and (2) when the patentee admits that the claims and specifications of the IPR and non-IPR patents are not meaningfully distinguishable. *See, e.g.*, *IOENGINE, LLC V. Paypal Holdings,* CA. 18-452-WCB, 2019 WL 3943058, at *1, *9 (D. Del. Aug. 21, 2019); *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 357–58 (D. Mass. 2015).

Here, the facts do not suggest simplification, so Elekta arbitrarily excludes from its analysis the 16 asserted claims of the '283 and '175 patents not subject to IPR. (Br. at 15.)[6] But Elekta cannot wish away the '283 and '175 patents. Best is unaware of any court that has ever employed such an arbitrary analysis in dealing with a case in which some asserted patents were not subject to IPR. The reason is obvious; any "simplification" analysis premised on ignoring half of the patents in the case would be erroneous on its face.

_____

[6] All references to Br. refer to Elekta's Motion to Stay, D.I 128-1.

In any event, even the unadulterated partial data does not favor a stay.  As set forth in the table above, for instance, only 4 of 11 asserted claims of the '096 patent are subject to IPR.  Elekta attempts to bolster this number by including in its simplification analysis several '096 patent claims that are *not* subject to IPR, but happen to be subject to the unrelated re-examination proceeding.  (Br. at 7–8.)[7] Elekta's requested stay, however, is limited to resolution of the IPR, and does not include re-examination.  (*See* D.I. 128 at 1.)

Nor does Elekta's proffered case law (*see* Br. at 16–17) support any of Elekta's tortured data exclusion and bolstering.  Instead, these cases reflect courts' focus on the proportion of asserted claims that are subject to IPR review, and whether the IPR and non-IPR patents are part of the same patent family or admitted by the patentee to be materially the same.  *See, e.g.*, *IOENGINE*, 2019 WL 3943058 at *1, 9 (simplification found where all asserted claims were subject to pending IPR petitions, and the IPR and non-IPR patents belonged to same patent family); *Intellectual Ventures II LLC v. Suntrust Banks, Inc.*, No. 1:13-cv-02454, 2014 WL 5019911, at *1 (N.D. Ga. Oct. 7, 2014) (simplification found where all

---

[7] Elekta's reference to IPR claims of the '283 patent is an error.  (Br. at 16.)  The '283 and '175 patents are not subject to IPR.

12

asserted claims were subject to pending IPR petitions); *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 357–58 (D. Mass. 2015) (simplification found based on patentee's admission that all of the patents "share similar specifications" and all claims share the same "key inventive aspect").

The remainder of Elekta's argument consists of vague, conclusory, and overgeneralized assertions. For instance, Elekta argues that "determinations on certain claims in the '096 and '490 Patents will also simplify the assessments of Asserted Claims in the other Asserted Patents." (Br. at 18.) Elekta does not identify which "certain claims" in the '096 and '490 Patents it is alluding to. Nor does Elekta explain what it means by "the assessments" of Asserted Claims in the other two patents. Certainly, the PTAB will not be assessing infringement.

Similarly, Elekta asserts that an IPR decision on the '096 patent will provide guidance on claim construction issues on the non-IPR '283 patent. Again, however, Elekta does not explain how. In those two IPRs, there was only one claim construction issue, namely whether the "computer" terms were subject to 35 U.S.C §112, ¶ 6 and thus limited to a certain kind of optimization called "SARP." And the PTAB has already provided that guidance in the institution decisions, where it agreed with Best that §112, ¶ 6 did not apply, and that the "computer" terms did not require construction. (Ex. 7 at 10–11; Ex. 8 at 11.) Notably, long

13

before the PTAB reached this conclusion, another district court in a prior case on the '283 patent similarly concluded that the "computer" claim at issue there (claim 25) was not limited to SARP.[8]  In any event, the "computer" term is only one of many claim construction issues in this case, which have been fully briefed.

Moreover, the '096 and '490 IPRs will provide little or no guidance on the '175 patent.  The '175 patent is unrelated to those two patents.  The '175 patent shares no inventors with the '096 or '490 patent and does not share a specification with either patent.[9]  The asserted claims of the '175 patent are directed to obtaining specific beam arrangement by optimizing the "tradeoff" between so-called "dosimetric cost" and "delivery efficiency."  (*See, e.g.*, D.I. 9-3, '175 Patent at Claims 1, 8, 11, 13, 19.)  The '096 patent IPR claims do not address this tradeoff. Unlike the asserted claims of the '175 patent, the '490 patent IPR claims deal with determining "collimator angle."  (D.I. 9-18, at claims 1, 4, 17–19.)

---

[8] Ex. 9 at 101; Ex. 10.  In its brief, Elekta states that the reason the PTAB refused to grant Elekta's IPR petitions on the '096 and '283 patents was "because it interpreted the claim language narrowly (supporting Elekta's claim construction and non-infringement positions in this litigation)."  (Br. at 6.)  This is not correct. In reality, Elekta did not advance any claim construction positions in either of those petitions.  (Ex. 11 at 25; Ex. 12 at 24–25.)  In each institution decision, the PTAB found that no terms required construction.  (Ex. 6 at 8; Ex. 5 at 8.)
[9] The mere fact that the '075 patent incorporates the '096 patent by reference does not make those two patents related.

Indeed, none of the prior art references cited in the '096 IPR petitions was identified as prior art against the '175 patent in Elekta's Invalidity Contentions in this case, or in any of the three failed IPR petitions against the '175 patent.  (Ex. 13 at 72–82; Ex. 14 at 6–7; Ex. 15 at 7–8; Ex. 16 at 5.)  In other words, Elekta and Varian (the petitioner in the IPRs) have already tacitly conceded that the validity of the '096 and '175 patents turns on different art and analyses.

Nevertheless, Elekta further suggests that because a single reference at play in the '490 IPR[10] was also asserted in two of the three failed IPR petitions against the '175 patent, the final '490 IPR decision "will be of general help to this Court in assessing" the '175 patent.  (Br. at 19.)  In addition to quite literally generalizing, Elekta is merely speculating about indirect PTAB guidance that may never come.[11]

---

[10] Elekta incorrectly identifies this reference as "Webb 2001."  (Br. at 19.)  Webb 2001 was the primary reference in two of the '175 IPR petitions, but it was not relied upon in the '490 IPR.  (Ex. 14 at 7; Ex. 16 at 5; Ex. 4 at 5-6.)  A different reference, Webb 1993, appeared in the '490 IPR and in one of the '175 IPR petitions, but it was not the primary reference in either.  (Ex. 14 at 7; Ex. 4 at 5-6.)

[11] At least one experienced patent court has observed that, even for patents in the same family as those subject to IPR, PTAB decisions have no impact on his cases. (Ex. 17, Transcript from *Raindance Technologies, Inc. v. 10X Genomics*, C.A. No. 15-152-RGA, at 23:22–24:10 (D. Del. Apr. 5, 2016) ("…whatever else [the PTAB] might do in the course of resolving the two IPRs it has, just in prior cases have had no impact at all on what I do, whether it's in relation to Markman, or in relation to…figuring out what is disclosed by prior art.".)

Moreover, the Court already has the PTAB's more direct guidance pertaining to Webb 1993 and the '175 patent in one of the decisions denying institution on the '175 patent.  There, the PTAB assessed Webb 1993 directly against the '175 patent and rejected Elekta's invalidity arguments.  (Ex. 14 at 20–27.)

Finally, Elekta asserts without any authority that the case will be simplified because all four patents deal with the general technical field of radiation therapy treatment planning – what Elekta calls "general subject matter."  (Br. at 18.) Elekta cannot, however, cite any authority to find that that co-existence of patents in a technical field of hundreds or thousands of patents (including Elekta's own extensive patent portfolio) means that IPR of one will simplify determinations of infringement or validity of another.

Accordingly, the "simplification" factor weighs against granting a stay.

### B.     Even as to IPR Claims, the IPRs Will Not Simplify the Litigation.

The number and nature of issues in this litigation *even as to just the patents in IPR* far exceed those in the IPRs.  Thus, any potential simplification does not favor a stay.  *See, e.g.*, *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 349 (D. Del 2016) ( (noting that "[t]he more that the scope of the issues to be resolved during the litigation exceeds the scope of the issues that can be examined during IPR, the greater this cuts against a finding that

an IPR proceeding will lead to great simplification of the issues at play [in the litigation].")  The only legal issue in the IPRs is the obviousness of nine asserted claims of the two IPR patents, and those arguments are based on just a handful of prior art references and combinations thereof.  By contrast, Elekta apparently intends to assert a litany of defenses as to each asserted claim, including: separate non-prior art based invalidity defenses under 35 U.S.C. §101 and §112 and waiver, estoppel, and laches.  (D.I. 78 at 30, 34–35, 37–38, 40, 42–43; Ex. 13 at 97–107.)  Elekta also apparently intends to assert invalidity some or all asserted claims based on sales and/or public use of some two dozen products.  (Ex. 13 at 11–27.)  And of course, there will be issues of infringement and damages.  The IPRs will not resolve or generate estoppel as to any of these issues.

Notably, Elekta has not identified any discovery that could be avoided through granting a stay, even if the PTAB invalidates all instituted claims.  This is not a case where, for example, invalidating some claims will remove some accused products.  All asserted claims are asserted against all asserted products.

### C.    A Stay Would Unduly Prejudice Best.

To determine if the plaintiff will be unduly prejudiced by a stay, courts often consider the relationship of the parties, the timing of the request for review, the timing of the request for stay, and the status of the review proceedings. *Siemens*

17

*Indus., Inc. v. Westinghouse Air Brake Techs. Corp.*, No. CV 16-284-LPS, 2018

WL 3046511, at *2 (D. Del. June 20, 2018). As to the latter, courts are properly

reluctant to stay proceedings between competitors. *Cooper Notification, Inc. v.*

*Twitter, Inc.*, C.A. No. 09-865-LPS, 2010 WL 5149351, at *5 (D. Del. Dec. 13,

2010); *Invensas Corp. v. Samsung Elecs. Co., Ltd*., C.A. No. 17-1363-MN-SRF,

2018 WL 4762957, at *6 (D. Del. Oct. 2, 2018). As explained below, these factors

demonstrate that a stay would unduly prejudice Best.

    ***First***, Best and Elekta are (and long have been) direct competitors in the

field to which the patents pertain. This weighs heavily against a stay. The history

of this relationship is detailed above, and in the declaration of Mr. Rowden.

(*Supra* at Section **II.A**.) Elekta is a leading seller of radiotherapy systems.

(Rowden Decl. at ¶¶ 7, 9.) Best currently sells its Corvus® TPS for radiotherapy

(Rowden Decl. at ¶¶ 4, 9), and Corvus® practices at least some of the asserted

patents. (D.I. 9 at ¶ 6.) Best alleges in this case that Elekta uses Best's claimed

inventions in Elekta's competing TPS. Elekta bundles its own TPS for sale with its

linear accelerators. (Rowden Decl. at ¶ 8.) The combination of this infringing

activity and Elekta's dominance over Best in the market works to suppress sales of

Corvus®. A stay would prolong this situation, prejudicing Best through loss of

sales and associated service revenue, loss of customer goodwill, and associated opportunity costs.[12]

A stay would also prejudice Best by delaying prompt enforcement of its patent rights, in which it has a legitimate interest. *Realtime Data LLC v. Actian Corp.*, C.A. No. 6:15-cv-463-RWS-JDL, 2016 WL 3277259, at *2 (E.D. Tex. June 14, 2016). Further, staying this litigation may hamper Best's efforts to license its patents to other competitors or resolve other disputes regarding these patents. *Intellectual Ventures I LLC v. Toshiba Corp.*, C.A. No. 13-453-SLR/SRF, 2015 WL 3773779, at *2 (D. Del. May 15, 2015) (hereinafter "IV Toshiba") (noting that even where plaintiff did not practice the asserted patents, a stay could have a negative impact on plaintiff's ability to license the patents, which would itself be

---

[12] Elekta states that Best has not yet produced documents showing that they are competitors, and that because Best did not move for a preliminary injunction, this shows that the two are not direct competitors. (Br. at 24–25.) Not so. The absence of a PI proceeding is not dispositive. *See, e.g., f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, No. 16-CV-41 (GMS), 2017 WL 10619854, at *1 n.3 (D. Del. Mar. 9, 2017). Also, Best has shown directly herein that Best and Elekta are direct competitors. Elekta, by contrast, merely speculates about Best's motives for forgoing preliminary injunction proceedings. Best should not be faulted for wanting to take more fulsome discovery, such as source code, before deciding whether to initiate injunctive relief proceedings. *See Cooper Notification, Inc.*, 2010 WL 5149351 at *4. And Best's amended complaint requests injunctive relief regarding the two unexpired patents. (D.I. 9 at Prayer for Relief F, J, N.)

prejudicial and present a clear tactical disadvantage to patentee).  For instance,

Best is currently asserting the same patents against another competitor, Varian.[13]

**Second**, the timing of Elekta's petitions suggests that it has a dilatory motive

and is pursuing a tactical advantage.  Indeed, Elekta waited until the last possible

moment, filing its IPR petitions just hours short of the statutory one-year bar date.

This weighs against a stay.  *TruePosition, Inc., v. Polaris Wireless, Inc.*, C.A. No.

12-646-RGA/MPT, 2013 WL 5701529, at *6 (D. Del. Oct. 21, 2013) (finding that

filing IPR petition on last possible day weighs against granting stay); *see IV*

*Toshiba*, 2015 WL 3773779 at *2; *Realtime Data*, 2016 WL 3277259 at *3.

**Third**, the scope and duration of the stay Elekta seeks further suggests a

dilatory motive and pursuit of a tactical advantage.  Elekta is asking for a stay as to

all patents and all claims, not just against the IPR patents or the instituted claims.

And Elekta is not only asking to stay this case for about a year until final IPR

decisions issue, but rather until any appeal is finalized.  (Br. at 25.)  An appeal at

the Federal Circuit alone could take another 18–24 months, or longer.  The fact

---

[13] The Court received this litigation via transfer from the United States District
Court for the District of Delaware.  (D.I. 54.)

that Elekta is seeking a stay through all appeals rather than just through final IPR decisions suggests a dilatory motive, not a simplification motive.

### D.   Elekta Has Failed to Demonstrate that Denying its Motion Would Cause Hardship or Inequity.

Best has demonstrated more than a fair possibility that the stay would damage Best's interests.  According to Elekta's own cited authority, Elekta is required to "demonstrate a clear case of hardship or inequity."  *IV Toshiba*, 2015 WL 3773779 at *2 ("It is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party.")

Elekta cannot make the required showing.  As a global company with over a billion dollars in annual sales, Elekta has the resources to proceed with litigation and its IPRs at the same time.  (Ex. 18 at 67.)  And it was Elekta that chose to initiate the IPRs a year after this litigation began.  Moreover, after the PTAB denied all of its IPR petitions, Elekta could have and should have simply proceeded in this litigation.  Instead, it filed another three IPR petitions and motions to join the Varian IPRs.  (Exs. 19–24.)  Elekta cannot now complain that it is prejudiced by having to go forward with two parallel proceedings.

21

**E.     The Status of the Litigation and IPRs Does Not Favor a Stay.**

This case was approximately 19 months old when Elekta filed its motion to stay. Thus, it is "further along than is typical for a motion to stay." *Ethicon*, 2019 WL 1276029 at *2. In any event, this case is not in the nascent stages that courts typically find support a stay (*e.g.*, no scheduling order, no discovery, claim construction not briefed, less than a few months old). *See Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 507–508 (D. Del. 2012); *Contour IP Holding, LLC v. GoPro, Inc.*, No. CV 15-1108-LPS-CJB, 2016 WL 4474340, at *3 (D. Del. July 14, 2016). This weighs against a stay.

The status of the IPRs also weighs against a stay. The latest IPR decision is expected to issue in May of 2021. It is highly unlikely that discovery in this case will be closed by then, and there should be ample time to absorb those decisions into the case without disruption. *See Nexans, Inc. v. Belden Inc*., C.A. No. 12-1491-SLR-SRF, 2014 WL 651913, at *4 (D. Del. Feb. 19, 2014) (having about 10 months between receiving the PTAB determination and going to trial weighs against a stay); *Siemens Indus., Inc.*, 2018 WL 3046511 at *1 (a series of IPR decisions expected months or days before trial, and even weeks after trial, could be incorporated into the proceedings without disrupting the schedule). This is

especially true here, because, as explained above, the IPRs will not substantially simplify this litigation. (*Supra* at Section **III.A**.)

Further, the parties and the Court have already invested substantial resources litigating this case.  There has been extensive jurisdictional motions practice. Claim construction has been fully briefed for months.  Contentions and written discovery, as well as responses, have been served.  Source code has been inspected.  Many documents have been collected and produced.  This level of investment in the litigation weighs against a stay.  *See, e.g.*, *Copy Prot., LLC v. Netflix, Inc*., C.A. No. 14-365-LPS, 2015 WL 3799363, at *1 (D. Del. June 17, 2015) (finding that stage of case weighed against a stay where parties had engaged in substantial discovery and were about to complete claim construction briefing).

## F.    COVID-19 Should Not Prevent this Case from Proceeding.

This case can and should progress, even considering the ongoing pandemic. Indeed, the day before it filed this motion, Elekta agreed to adjust the case schedule. (D.I. 129.)  That agreement expressly contemplated, and was the parties' response to, among other things, the impact of COVID-19.  (*Id*. at 2.)  Such cooperation and flexibility, not stomping the brakes on this case, is the appropriate way to deal with COVID-19.

Notably, despite suggesting generally that a stay will ameliorate "COVID-19 related logistical difficulties," the only thing Elekta specifically identifies is that Elekta "does not have its normal capabilities" to collect ESI.  (Br. at 23.)  Elekta does not even say that COVID-19 makes it difficult or impossible, just that its capabilities are not its "normal" ones, whatever that means.  Regardless, the parties agreed to and the Court recently allowed moving the deadline to substantially complete the production of documents to August 3, 2020.  Elekta knew of its capabilities to meet this deadline when it agreed to it and requested the Court to order it.  Elekta's new speculative attorney argument vaguely forewarning of potential "logistical difficulties" lacks credibility and deserves no weight.

Litigants and law firms across the country are adapting to civil litigation during this pandemic, and the parties can, too.  To the extent there are legitimate challenges arising from COVID-19, if anything, the parties should make progress wherever they can, not wait for restrictions to ease before putting forth any effort.

Given the status of this case, there is plenty of opportunity to make progress in this case, even under the current circumstances.  For example, written discovery and document discovery do not require travel or in-person meetings and can and should proceed.  Indeed, the parties have been actively conferring about discovery.  Also, if called for when the time comes, depositions could be held remotely.

24

Further, contrary to Elekta's argument (Br. at 22–23), General Order 20-01 as amended does not suggest that a stay is appropriate. First, this Order, as amended, pertains primarily to criminal matters. Second it temporarily limits *in-person* Court operations.[14] It does not affect motions (such as discovery motions in civil cases) that can be resolved without oral argument. Nor does it preclude holding oral arguments by phone. Indeed, the Order specifically allows judges to hold hearings and conferences. (General Order 20-01 at ¶ 6.)

Elekta suggests that this case should be stayed, because the Court has limited resources and COVID-19 requires the Court to "prioritize criminal cases over civil matters." (Br. at 22–23.) But such prioritization is nothing new, and if the parties can continue to cooperate, then progressing this case over the coming months will not require much, if any, attention from the Court.

## IV.   CONCLUSION

For the foregoing reasons, Best respectfully requests that the Court deny Elekta's motion to stay.

---

[14] The Court has been amending these orders every few weeks, suggesting that it is periodically reevaluating of the impact of COVID-19 on Court operations. The lengthy stay sought by Elekta is not consistent with this measured approach.

Dated:  June 12, 2020

Respectfully submitted,

/s/ Brannon C. McKay
_____
Brannon C. McKay
Georgia Bar Number 558603
CLAYTON, MCKAY & BAILEY P.C.
800 Battery Ave, Suite 100
Atlanta, GA 30339
Tel. 404-414-8633
Fax. 404-704-0670
brannon@cmblaw.com

/s/ Anthony A. Son (w/express permission)
Anthony A. Son
Maddox Edwards, PLLC
1900 K Street NW, Suite 725
Washington, DC 20006
202.830.0238
ason@meiplaw.com

/s/ Steven A. Maddox (w/express permission)
Steven A. Maddox (pro hac)
Maddox Edwards, PLLC
1900 K Street NW, Suite 725
Washington, DC 20006
202.830.0238
smaddox@meiplaw.com

/s/ Jeremy J. Edwards (w/express permission)
Jeremy J. Edwards (pro hac)
Maddox Edwards, PLLC
1900 K Street NW, Suite 725
Washington, DC 20006
202.830.0238
jedwards@meiplaw.com

/s/ Matthew C. Ruedy (w/express permission)
Matthew C. Ruedy (pro hac)
Maddox Edwards, PLLC
1900 K Street NW, Suite 725
Washington, DC 20006
202.830.0238
mruedy@meiplaw.com

/s/ Kaveh V. Saba (w/express permission)
Kaveh V. Saba (pro hac)
Maddox Edwards, PLLC
1900 K Street NW, Suite 725
Washington, DC 20006
202.830.0238
ksaba@meiplaw.com

*Attorneys for Plaintiff*
*Best Medical International, Inc.*

26

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned counsel certifies that the foregoing brief has been prepared in Times New Roman, 14 point, one of the four fonts and points approved by the Court in L.R. 5.1(C).

/s/ Brannon McKay
Brannon McKay

## CERTIFICATE OF SERVICE

I certify that on June 12, 2020, I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF Systems, which will automatically send email notification of such filing to all attorneys of record.

Respectfully submitted,

Dated: June 12, 2020                    CLAYTON, MCKAY & BAILEY P.C.

/s/ Brannon McKay
Brannon C. McKay
Georgia Bar Number 558603
800 Battery Ave, Suite 100
Atlanta, GA 30339
Tel. 404-414-8633
Fax. 404-704-0670
brannon@cmblaw.com